﻿Citation Nr: AXXXXXXXX
Decision Date: 07/31/20 Archive Date: 07/31/20

DOCKET NO. 191112-45679
DATE: July 31, 2020

ORDER

A rating of 50 percent for posttraumatic stress disorder (PTSD) is granted.

A compensable rating for dermatitis is denied.

Service connection for chronic fatigue syndrome is denied.

Service connection for a gastrointestinal disability, including irritable bowel syndrome (IBS), is denied. 

Service connection for a left lower extremity neurological disability, including restless leg syndrome, is denied.

Service connection for a right lower extremity neurological disability, including restless leg syndrome, is denied.

Service connection for a bilateral upper extremity neurological disability, including tremors in the hands, is denied.

Service connection for an undiagnosed illness manifested by left hand and wrist pain and weakness is granted. 

Service connection for an undiagnosed illness manifested by right hand and wrist pain and weakness is granted. 

REMANDED

The claim for service connection for chronic sinusitis is remanded.

The claim for service connection for headaches is remanded.

FINDINGS OF FACT

1. Throughout the appeal period, the Veteran’s PTSD has resulted in no more than occupational and social impairment with reduced reliability and productivity.

2. Throughout the appeal period, the Veteran’s dermatitis has not been manifested by characteristic lesions affecting at least 5 percent, but less than 20 percent, of the entire body or exposed areas, or required intermittent systemic therapy.

3. The preponderance of the evidence is against a finding that the Veteran has chronic fatigue syndrome or an undiagnosed illness manifested by fatigue. 

4. The preponderance of the evidence is against a finding that the Veteran has a current gastrointestinal disability, including IBS or an undiagnosed illness manifested by gastrointestinal signs and symptoms which have existed for six months or more.

5. The preponderance of the evidence is against a finding that the Veteran has a current left or right lower extremity neurological disability, including restless leg syndrome or an undiagnosed illness manifested by neurological signs or symptoms which have existed for six months or more 

6. The preponderance of the evidence is against a finding that the Veteran has a current left or right upper extremity neurological disability, including tremors in the hands or an undiagnosed illness manifested by neurological signs or symptoms which have existed for six months or more. 

7. The Veteran served in the Southwest Asia Theater of operations during the Persian Gulf War, and the probative evidence of record shows more than six months of signs and symptoms of bilateral wrist and hand pain and weakness, which have not been attributed to any known clinical diagnosis by history, physical examination, or laboratory tests. 

CONCLUSIONS OF LAW

1. The criteria for a rating of 50 percent, but not higher, for PTSD have been more nearly approximated. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411 (2019).

2. The criteria for a compensable rating for dermatitis have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.118, Diagnostic Code 7806 (2019).

3. The criteria for establishing entitlement to service connection for chronic fatigue syndrome have not been met. 38 U.S.C. §§ 1110, 1117, 5107 (2012); 38 C.F.R. §§ 3.303, 3.317 (2019). 

4. The criteria for establishing entitlement to service connection for a gastro-intestinal disability, including IBS, have not been met. 38 U.S.C. §§ 1110, 1117, 5107 (2012); 38 C.F.R. §§ 3.303, 3.317 (2019). 

5. The criteria for establishing entitlement to service connection for a bilateral lower extremity neurological disability, including restless leg syndrome, have not been met. 38 U.S.C. §§ 1110, 1117, 5107 (2012); 38 C.F.R. §§ 3.303, 3.317 (2019). 

6. The criteria for establishing entitlement to service connection for an upper extremity neurological disability, including tremors in the hands, have not been met. 38 U.S.C. §§ 1110, 1117, 5107 (2012); 38 C.F.R. §§ 3.303, 3.317 (2019). 

7. The criteria for establishing entitlement to service connection for an undiagnosed illness manifested by bilateral wrist and hand pain and weakness have been met. 38 U.S.C. §§ 1110, 1117, 5107 (2012); 38 C.F.R. §§ 3.303, 3.317 (2019). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from June 2003 to June 2007, including three tours of duty in the Southwest Asia theater of operations during the Persian Gulf War. This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a June 2019 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO). 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law, which went into effect on February 19, 2019, creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. On November 12, 2019, the Veteran appealed the June 2019 rating decision to the Board and requested direct review of the evidence considered by the agency of original jurisdiction (AOJ).

Disability Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule of Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. 

1. Entitlement to a rating in excess of 30 percent for PTSD

The Veteran’s service-connected PTSD has been assigned a 30 percent rating under the criteria set forth in the General Rating Formula for Rating Mental Disorders (General Rating Formula).

Under the General Rating Formula, a 30 percent rating is warranted when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal, due to such symptoms as: depressed mood, anxiety, suspiciousness, weekly or less often panic attacks, chronic sleep impairment, and mild memory loss, such as forgetting names, directions, recent events. 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 50 percent rating is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory such as, retention of only highly learned material, forgetting to complete tasks; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating is warranted when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to suicidal ideation; obsessional rituals which interfere with routine activities, speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, or effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation, neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances, including work or a work-like setting; and the inability to establish and maintain effective relationships. Id.

A 100 percent rating is warranted when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene; disorientation to time and place; memory loss for names of close relatives, own occupation, or own name. Id.

The symptoms listed in the General Rating Formula are not intended to constitute an exhaustive list, but rather serve as examples of the type and degree of the symptoms, or effects thereof, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Accordingly, the evidence considered in determining the level of impairment under Diagnostic Code 9411 is not restricted to the symptoms provided in the diagnostic code. Instead, VA must consider all symptoms associated with the Veteran’s PTSD and their effect on the level of occupational and social impairment. Id. When evaluating the level of disability from a mental disorder, VA will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126(b) (2019).

Upon review of the record, the Board finds that the criteria for a rating of 50 percent, but not higher, have been more nearly approximated. 

In March 2019, the Veteran submitted a Disability Benefits Questionnaire (DBQ) completed by a private psychologist who evaluated him in January 2019. The DBQ shows that the Veteran reported feeling anxious, stressed, and restless most of the time, and he endorsed symptoms of anxiety; suspiciousness; nightmares every couple of weeks; chronic sleep impairment; daytime fatigue; irritability; mild memory loss, such as forgetting names, directions or recent events; difficulty concentrating; hypervigilance; avoidance; disturbances of mood or motivation; exaggerated startle response; intermittently illogical, obscure, or irrelevant speech; difficulty adapting to stressful circumstances, including work or a work like setting; and obsessional rituals that interfere with routine activities. It was noted that the Veteran’s speech was rapid and circumstantial, but normal in terms of content. With respect to social functioning, the Veteran reported being emotionally close to his wife and denied any excessive arguing or physical altercations. He also reported having dinner with small groups of friends about once a week. With respect to occupational functioning, the Veteran described a steady work history since his discharge from active duty. He reported currently working 40 to 60 hours a week and described some difficulties relating to his civilian coworkers. The psychologist characterized the Veteran’s level of functioning as occupational and social impairment with reduced reliability and productivity.

The Veteran underwent a VA mental health examination in June 2019, during which he reported symptoms of anxiety, panic attacks, intrusive thoughts and memories, nightmares, chronic sleep disturbance, suspiciousness, hypervigilance, avoidance, irritability, outbursts of anger, feelings of detachment from others, and feelings of guilt. He reported having two security systems and cameras around his house, never sitting with his back to a door, counting exits and doors, checking the locks on doors a couple times a day, keeping the blinds closed during the daytime, keeping a firearm with him most of the time, and avoiding crowds. He reported difficulty falling asleep and occasionally having nightmares. He stated that he slept about four to five hours a night and felt tired during the day. The Veteran denied receiving any treatment for his mental health symptoms. The examiner indicated that the Veteran exhibited good eye contact; his mood was generally euthymic with periods of anxiety and irritability; his affect was full range; and thought process was logical. There was no evidence of delusions, hallucinations, or suicidal or homicidal ideations. 

With respect to social functioning, the Veteran reported having a good relationship with his wife of 13 years, but noted that he sometimes snapped at his ten-year-old son when he pushed limits. He also reported having a few friends and enjoying going to a shooting range and playing golf. With respect to occupational functioning, the Veteran reported being employed as a security analyst for the past ten years and denied any occupational difficulties. He stated that his concentration and focus were pretty good, but his memory was sometimes fuzzy. The examiner characterized the Veteran’s level of functioning as occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. 

In summary, the record shows some evidence of panic attacks, rapid and circumstantial speech, and disturbances of motivation and mood, and the private psychologist who evaluated the Veteran in January 2019 characterized his level of functioning as occupational and social impairment with reduced reliability and productivity. After resolving any doubt in favor of the Veteran, the Board finds that criteria for a rating of 50 percent have been more nearly approximated. 

The Board finds that a rating in excess of 50 percent is not warranted at any time during the period under review, as the record does not show occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood. Although the January 2019 private psychologist checked the box indicating that the Veteran exhibited “speech intermittently illogical, obscure, or irrelevant,” in the narrative portion of the DBQ, the psychologist indicated that the Veteran’s speech was normal in terms of content, and his thought content fell within normal limits. Additionally, although the private psychologist checked the box indicating that the Veteran had “difficulty adapting to stressful circumstances, including work or a work like setting,” the record shows that the Veteran reported working 40 to 60 hours a week, and the only work deficiency noted was difficulty relating to his civilian coworkers. Furthermore, although the psychologist checked the box indicating that the Veteran engaged in “obsessional rituals that interfere with routine activities,” the DBQ does not indicate what those rituals were, or how they interfered with routine activities and functioning. Indeed, the DBQ found the level of functioning to be occupational and social impairment with reduced reliability and productivity, suggesting that any such obsessional rituals are not severe enough to result in deficiencies in most areas.

Ultimately, it is the impact on functioning that results from the symptomatology that dictates the evaluation to be assigned. See Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013) ("[38 U.S.C.] § 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas"). Here, the record shows that the Veteran maintains a good relationship with his wife, regularly socializes with friends, and maintains full-time employment. Thus, the Board finds the record does not demonstrate occupational and social impairment with deficiencies in most areas, and a disability rating in excess of 50 percent is not warranted. See 38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code 9411.

2. Entitlement to a compensable rating for dermatitis 

The Veteran’s service-connected dermatitis has been assigned a noncompensable rating under the criteria set forth in 38 C.F.R. § 4.118, Diagnostic Code 7806, which is evaluated under the General Rating Formula for the Skin (General Rating Formula). 

Under the General Rating Formula, a 10 percent rating is assigned for characteristic lesions affecting at least 5 percent, but less than 20 percent, of the entire body or exposed areas; or when intermittent systemic therapy (including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immuno-suppressive drugs) is required for a total duration of less than 6 weeks over the past 12-month period. 38 C.F.R. § 4.118, General Rating Formula. A 30 percent rating is assigned for characteristic lesions affecting 20 to 40 percent of the entire body or exposed areas; or when systemic therapy is required for a total duration of 6 weeks or more, but not constantly, over the past 12-month period. Id. A 60 percent rating is assigned for characteristic lesions affecting more than 40 percent of the entire body or exposed areas; or when constant or near-constant systemic therapy is required. Id. “Systemic therapy” is defined as treatment that is administered through any route (orally, injection, suppository, intranasally) other than the skin. 38 C.F.R. § 4.118(a). “Topical therapy” is defined as treatment that is administered through the skin. Id.

Upon review of the record, the Board finds that a compensable rating for dermatitis is not warranted at any time during the period under review. The Veteran underwent a VA skin examination in April 2019, during which he reported breaking out with pruritic rashes on his arms, legs, shoulder blades, and back. He reported being prescribed a topical cream on one occasion a year earlier and stated that if he has any more outbreaks, he would use over-the-counter hydrocortisone cream. The examiner indicated that the Veteran’s skin condition had resolved and no longer requires treatment of any type. There was no evidence of a skin condition noted to be present during the examination. 

A review of the Veteran’s treatment records shows that the Veteran was given Triamcinolone and Loratadine creams for skin rashes in September 2017; however, the record shows no complaints of or treatment for a skin condition during the course of his claim. As the record does not show characteristic lesions affecting at least 5 percent, but less than 20 percent, of the entire body or exposed areas, or intermittent systemic therapy, a compensable rating for dermatitis is denied. 

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. Generally, to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

Under legislation specific to Persian Gulf War veterans, service connection may be established for a qualifying chronic disability that became manifest during active service in the Southwest Asia theater of operations during the Persian Gulf War or to a degree of 10 percent or more no later than December 31, 2021. 38 U.S.C. § 1117; 38 C.F.R. § 3.317(a)(1). 

The term “qualifying chronic disability” means a chronic disability resulting from any of the following (or any combination of any of the following): (A) an undiagnosed illness; (B) a medically unexplained chronic multi-symptom illness that is defined by a cluster of signs or symptoms, such as chronic fatigue syndrome, fibromyalgia, and functional gastrointestinal disorders (excluding structural gastro-intestinal diseases); or (C) any diagnosed illness that the Secretary determines in regulations prescribed under subsection (d) warrants presumptive service-connection. 38 U.S.C. § 1117(a)(2); 38 C.F.R. § 3.317(a)(2)(i).

Such chronic disability must not be attributed to any known clinical diagnosis by history, physical examination, or laboratory tests. 38 C.F.R. § 3.317(a)(1). Objective indications of a chronic disability include both “signs,” in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317(a)(3). Disabilities that have existed for six months or more and disabilities that exhibit intermittent episodes of improvement and worsening over a six-month period will be considered chronic. 38 C.F.R. § 3.317(a)(4). 

Functional gastrointestinal disorders are a group of conditions characterized by chronic or recurrent symptoms that are unexplained by any structural, endoscopic, laboratory, or other objective signs of injury or disease and may be related to any part of the gastrointestinal tract. Specific functional gastrointestinal disorders include, but are not limited to, irritable bowel syndrome, functional dyspepsia, functional vomiting, functional constipation, functional bloating, functional abdominal pain syndrome, and functional dysphagia. These disorders are commonly characterized by symptoms including abdominal pain, substernal burning or pain, nausea, vomiting, altered bowel habits (including diarrhea, constipation), indigestion, bloating, postprandial fullness, and painful or difficult swallowing. 38 C.F.R. § 3.317(a)(2)(i)(B), Note. 

Manifestations of an undiagnosed illness may include, among other things, fatigue, headache, muscle pain, joint pain, neurological signs or symptoms, upper or lower respiratory signs or symptoms, sleep disturbances, and gastrointestinal signs or symptoms. 38 C.F.R. § 3.317(b). Compensation shall not be paid, however, if there is affirmative evidence that an undiagnosed illness was not incurred during active military, naval or air service in the Southwest Asia theater of operations during the Persian Gulf War; or if there is affirmative evidence that an undiagnosed illness was caused by a supervening condition or events that occurred between the appellant’s most recent departure from active duty in the Southwest theater of operations during the Persian Gulf War and the onset of the illness; or if there is affirmative evidence that the illness is the result of the appellant’s own willful misconduct or the abuse of alcohol or drugs. 38 U.S.C. § 1117; 38 C.F.R. § 3.317(c).

Service personnel records confirm that the Veteran served in the Southwest Asia theater of operations during the Persian Gulf War. See 38 C.F.R. § 3.317(e) (defining the Southwest Asia theater of operations); see also 38 U.S.C. § 101(33) (2012) (defining the Persian Gulf War as beginning on August 2, 1990, and ending on a date thereafter to be prescribed by Presidential proclamation or law). Therefore, he qualifies for consideration of presumptive service connection for disabilities resulting from an undiagnosed illness or medically unexplained chronic multi-symptom illness. 

3. Entitlement to service connection for chronic fatigue syndrome

In January 2019, the Veteran submitted a report prepared by a private chiropractor in support of his claims for service connection. That report indicates that chronic fatigue syndrome is defined as a “condition of long term severe fatigue that is not relieved by rest and is not directly caused by another condition.” The chiropractor indicated that she diagnosed the Veteran with chronic fatigue syndrome during her evaluation and opined that it was at least as likely as not related to service because it had its onset during service and is presumptively related to the Veteran’s Persian Gulf War service. 

Upon review of the record, the Board finds that the preponderance of the evidence is against a finding that the Veteran has chronic fatigue syndrome or an undiagnosed illness manifested by fatigue. 

Service treatment records show that in August 2004, the Veteran reported symptoms of depression, anxiety, combat stress, and difficulty sleeping, and the assessment was adjustment disorder with anxiety. On an August 2005 post-deployment health assessment and a November 2008 post-deployment health reassessment, the Veteran reported still feeling tired after sleeping. 

During a November 2015 VA mental health examination, the Veteran reported symptoms of anxiety and chronic sleep impairment, and the diagnosis was PTSD.

An October 2017 VA mental health treatment record shows that the Veteran reported that sleep deprivation and fatigue were interfering with his ability to concentrate. He reported having combat-related nightmares, waking up about three to four times a night, and getting about four hours of interrupted sleep a night, causing him to feel fatigued during the day. It was noted that the Veteran’s symptoms fell just below the cutoff for a diagnosis of PTSD, and he was diagnosed with other specified trauma disorder and rule out unspecified insomnia disorder versus obstructive sleep apnea. The treatment provider referred the Veteran for a sleep apnea evaluation. 

A February 2018 VA sleep medicine consultation note shows that the Veteran reported feeling tired when he woke up, having daytime sleepiness, waking up with dry mouth, and having morning headaches. It was noted that his body mass index (BMI) was greater than 30 percent, and the Veteran was given a home sleep apnea test. In April 2018, a VA treatment provider reviewed the results of the home sleep test and confirmed the diagnosis of mild obstructive sleep apnea.

The Veteran underwent a VA examination in April 2019, during which he reported a history of waking up tired, feeling drained throughout the day, and having little energy about twice a week. The examiner opined that the Veteran did not have chronic fatigue syndrome. In support of this, the examiner explained that the only diagnosis of chronic fatigue syndrome in the record was from a private consultant who evaluated the Veteran in the Veteran in January 2019, and she offered no medical explanation for that diagnosis. The examiner explained that the Veteran had several clinical conditions that may cause symptoms similar to chronic fatigue syndrome which have not been ruled out as causes of the Veteran’s fatigue, including adjustment disorder, obesity, and obstructive sleep apnea. The Board finds the opinion of the VA examiner to be highly probative and persuasive, as it is based on a review of the evidence of record and supported with a reasoned medical explanation that is consistent with the Veteran’s treatment records. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008).

Conversely, the Board finds the opinion of the private chiropractor to be significantly less probative, as is not supported by a rationale explaining the basis for the diagnosis of chronic fatigue syndrome. See Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (“[A] medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions”). Furthermore, the private chiropractor did not appear to review the Veteran’s treatment records to determine whether the Veteran’s complaints of fatigue could be attributed to a known clinical diagnosis. Notably, she acknowledged in her report that the Veteran’s PTSD was manifested by symptoms of insomnia and sleep deprivation; however, she did not explain why the Veteran’s symptoms of fatigue were not explained by insomnia and sleep deprivation caused by PTSD. 

As the most probative evidence shows that the Veteran does not have chronic fatigue syndrome, service connection for chronic fatigue syndrome is denied. See 38 C.F.R. § 3.317. 

4. Service connection for a gastrointestinal disability, including IBS 

In January 2019, the Veteran submitted a report prepared by a private chiropractor in support of his claims for service connection. That report indicates that the Veteran has had intermittent constipation and diarrhea since his Persian Gulf War service. The chiropractor diagnosed the Veteran with IBS and opined that it was at least as likely as not related to service because it had its onset during service and is presumptively related to the Veteran’s Persian Gulf War service. 

Upon review of the record, the Board finds that the preponderance of the evidence is against a finding that the Veteran has a current gastrointestinal disability, including IBS or an undiagnosed illness manifested by gastrointestinal signs and symptoms.

Service treatment records show that the Veteran reported having an upset stomach and nausea in September 2004, and he was diagnosed with indigestion / mild gastroenteritis. On an August 2005 post-deployment health assessment, he reported having diarrhea and frequent indigestion during his deployment, but not currently. The Board finds that these complaints are not sufficiently proximate to the Veteran’s claim to support a finding that he has a current gastrointestinal disability, as these complaints were over 13 years before the Veteran’s claim for service connection for IBS, and he subsequently denied having those symptoms on a March 2007 post-deployment health assessment and a November 2008 post-deployment health reassessment. See Romanowsky v. Shinseki, 26 Vet. App. 289 (2013) (holding that when the record contains a recent diagnosis of disability prior to a veteran filing a claim for benefits based on that disability, the report of diagnosis is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency). 

Post-service treatment records show no complaints of or treatment for gastro-intestinal symptoms or a diagnosis of IBS. The record shows that the Veteran was asked about gastrointestinal symptoms in September 2017, December 2017, and June 2018; however, there was no mention of constipation or diarrhea, and the Veteran specifically denied any changes in bowel habits, abdominal pain, nausea, or vomiting. A March 2018 VA treatment record notes that a comprehensive 12-point review of symptoms, including gastrointestinal, was performed and was negative except for the complaints mentioned in that treatment record. That record contained no gastrointestinal complaints. See AZ v. Shinseki, 731 F.3d 1303, 1311 (Fed. Cir. 2013) (recognizing the widely held view that the absence of an entry in a record may be considered evidence that the fact did not occur if it appears that the fact would have been recorded if present). The Board finds the Veteran’s statements made for purposes of seeking treatment to be more credible and persuasive than statements made to a private consultant for purposes of seeking compensation. See Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) (VA cannot ignore a veteran’s testimony simply because he or she is an interested party; however, personal interest may affect the credibility of the evidence). 

The Veteran underwent a VA examination in April 2019, during which he reported inconsistent bathroom habits, including feeling a tight knot in his stomach, pain when using the bathroom, and occasional loose stools. He reported discussing it with his doctor two years earlier, but denied any taking any medication or receiving any treatment for a gastrointestinal condition. The examiner indicated that the Veteran did not have a current intestinal condition. The Board finds the opinion of the VA examiner to be highly probative and persuasive, as it is based on a review of the evidence of record and supported a with reasoned medical explanation that is consistent with the Veteran’s treatment records. See Nieves-Rodriguez, 22 Vet. App. at 302-04.

Conversely, the Board finds the opinion of the private chiropractor to be significantly less probative, as it appears to be based solely on the Veteran’s report of ongoing symptoms of constipation and diarrhea, which the Board has already found lacks credibility. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that “[a]n opinion based on an inaccurate factual premise has no probative value”). Moreover, there is no evidence that the private chiropractor treated the Veteran for his claimed symptoms of constipation and diarrhea or reviewed his treatment records to determine whether the Veteran ever reported or denied gastrointestinal symptoms. 

As the most probative evidence shows that the Veteran does not have IBS or any gastrointestinal signs or symptoms which have existed for six months or more, with or without intermittent episodes of improvement and worsening, service connection for a gastrointestinal disability, including IBS, is denied. See 38 C.F.R. § 3.317. 

5. Entitlement to service connection for a bilateral lower extremity neurological disability, including restless leg syndrome

In January 2019, the Veteran submitted a report prepared by a private chiropractor in support of his claims for service connection. That report indicates that the Veteran had a diagnosis of restless leg syndrome, and the chiropractor opined that it was at least as likely as not related to service because it had its onset during service and is presumptively related to the Veteran’s Persian Gulf War service as an undiagnosed illness manifested by neurological signs and symptoms. 

Upon review of the record, the Board finds that the preponderance of the evidence is against a finding that the Veteran has restless leg syndrome or an undiagnosed illness manifested by lower extremity neurological signs and symptoms.

Service treatment records and post-service treatment records show no complaints of or treatment for lower extremity neurological symptoms, including restless leg syndrome. Post-service treatment records dated September 2017, October 2017, December 2017, June 2018, and July 2018 indicate that that cranial nerves II through XII were intact, and the Veteran exhibited no motor or sensory deficits. A March 2018 VA treatment record notes that a comprehensive 12-point review of symptoms, including neurological, was performed and was negative except for the complaints mentioned in that treatment record. That record contained no neurological complaints. See AZ, 731 F.3d at 1311. The Board finds the Veteran’s statements made for purposes of seeking treatment to be more credible and persuasive than statements made to a private consultant for purposes of seeking compensation. See Cartright, 2 Vet. App. at 25. 

The Veteran underwent a VA examination in April 2019, during which he reported constant shaking, toe tapping when sitting, and movement in his legs when lying down. The examiner noted that although a private consultant diagnosed the Veteran with restless leg syndrome, she offered no objective medical evidence to support that diagnosis. The examiner concluded that the Veteran did not have signs or symptoms of a neurological condition, as his physical examination was unremarkable and service treatment and post-service treatment records showed no complaints of, treatment for, or diagnosis of restless legs. The Board finds the opinion of the VA examiner to be highly probative and persuasive, as it is based on a review of the evidence of record and supported a with reasoned medical explanation that is consistent with the Veteran’s treatment records. See Nieves-Rodriguez, 22 Vet. App. at 302-04.

Conversely, the Board finds the opinion of the private chiropractor to be significantly less probative, as is not supported by a rationale explaining the basis for the diagnosis. See Stefl, 21 Vet. App. at 124. Moreover, there is no evidence that the private chiropractor treated the Veteran for his claimed symptoms or reviewed his treatment records to determine whether the Veteran ever reported or denied lower extremity neurological symptoms. 

As the most probative evidence shows that the Veteran does not have restless leg syndrome or any current lower extremity neurological symptoms which have existed for six months or more, with or without intermittent episodes of improvement and worsening, service connection for a disability manifested by lower extremity neurological symptoms, including restless leg syndrome, is denied. See 38 C.F.R. § 3.317. 

6. Entitlement to service connection for a bilateral upper extremity disability, claimed as tremors of the hands 

As an initial matter, the Board notes that on his February 2019 application for benefits, the Veteran indicated that he was seeking service connection for tremors in the hands. However, for the reasons set forth below, the Board has broadened the scope of the Veteran’s claim based on his reported symptoms and information contained in the record. See Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009) (The scope of a claim includes any disability that reasonably may be encompassed by the claimant’s description of the claim, reported symptoms, and the other information of record).

Upon review of the record, the Board finds that service connection is warranted for an undiagnosed illness manifested by bilateral wrist and hand pain and weakness. 

During an April 2019 VA examination, the Veteran reported hand symptoms that he described as similar to muscle spasms, arthritis, and/or carpal tunnel syndrome. He reported periods of decreased grip strength and numbness in the fingers, which, at times, have caused him to randomly let go of his bike handles and be unable to fully open and close his hands. The examiner concluded that the Veteran did not have signs or symptoms of a neurological condition, as his physical examination was unremarkable and service treatment and post-service treatment records showed no complaints of, treatment for, or diagnosis of tremors in the hands. 

While the Veteran’s treatment records do not show treatment for symptoms described as “tremors in the hands,” they do show that in September 2017, the Veteran reported symptoms of bilateral wrist pain for the past six months, which have caused weakness in his hands and difficulty holding on to his bike handles. A physical examination revealed tenderness to palpation of the wrist joints and discomfort on extension of the wrists. X-rays were unremarkable. The diagnosis was bilateral wrist pain, and the treatment provider ordered the Veteran wrist splints. Subsequent treatment records continue to list bilateral hand and wrist joint pain on the Veteran’s active problem list. 

In summary, the record shows that the Veteran served in the Southwest Asia Theater of operations during the Persian Gulf War, and the medical evidence of record shows more than six months of signs and symptoms of bilateral wrist and hand pain and weakness, which have not been attributed to any known clinical diagnosis by history, physical examination, or laboratory tests. As muscle and joint pain may be signs and symptoms of an undiagnosed illness, the Board finds that service connection for bilateral wrist and hand pain and weakness is warranted. See 38 C.F.R. § 3.317(b). 

With respect to the Veteran’s claimed symptoms of “tremors in the hands,” the Board finds that the preponderance of the evidence is against a finding that the Veteran has an undiagnosed illness manifested by upper extremity neurological symptoms, including tremors in the hands.

Service treatment records and post-service treatment records show no complaints of or treatment for upper extremity neurological symptoms, including tremors in the hands. As previously noted, VA treatment records dated September 2017, October 2017, December 2017, June 2018, and July 2018 indicate that that cranial nerves II through XII were intact, and the Veteran exhibited no motor or sensory deficits. A March 2018 VA treatment record notes that a comprehensive 12-point review of symptoms, including neurological, was performed and was negative except for the complaints mentioned in that treatment record. That record contained no neurological complaints. See AZ, 731 F.3d at 1311. 

During the April 2019 VA examination, the examiner indicated that the Veteran did not have signs or symptoms of a condition, as his physical examination was unremarkable, and service treatment and post-service treatment records showed no complaints of, treatment for, or diagnosis of tremors in the hands. The Board finds the opinion of the VA examiner to be highly probative and persuasive with respect to neurological symptoms, as it is based on a review of the evidence of record and supported a with reasoned medical explanation that is consistent with the Veteran’s treatment records. See Nieves-Rodriguez, 22 Vet. App. at 302-04.

Although the January 2019 report from the private chiropractor indicated that the Veteran had tremors in the hands attributable to an undiagnosed illness, the Board finds her opinion to be significantly less probative, as is not supported by a rationale explaining the basis for the diagnosis. See Stefl, 21 Vet. App. at 124. Moreover, there is no evidence that the private chiropractor treated the Veteran for his claimed symptoms or reviewed his treatment records to determine whether the Veteran reported or denied upper extremity neurological symptoms. 

As the most probative evidence shows that the Veteran does not have tremors in the hands or any current upper extremity neurological symptoms which have existed for six months or more, with or without intermittent episodes of improvement and worsening, service connection for an undiagnosed illness manifested by upper extremity neurological symptoms is denied. See 38 C.F.R. § 3.317. 

REASONS FOR REMAND

7. Entitlement to service connection for chronic sinusitis is remanded

Service treatment records show that in June 2003, the Veteran was treated for congestion, sore through, cough, green sputum, shortness of breath, fever, and night sweats, and the assessment was acute upper respiratory infection. He was seen again in July 2003 with similar complaints of congestion, sore throat, cough, greenish/brown sputum, fever, and night sweats, and he was diagnosed with sinusitis. In November 2003, the Veteran sought treatment for nasal congestion and productive cough, and he was diagnosed with a viral upper respiratory infection. In October 2004, he complained of congestion, runny nose, sore throat, shortness of breath, cough, and wheezing, and the assessment was pharyngitis and bronchitis. On an August 2005 post-deployment health assessment, the Veteran reported having a chronic cough, runny nose, difficulty breathing, and headaches during his deployment. 

Post-service treatment records show that the Veteran consistently denied respiratory symptoms. However, a CT scan of the head performed in July 2018 due to complaints of headaches revealed mild sinus disease.

The Veteran underwent a VA examination in April 2019, during which he reported peri-annual symptoms of watery eyes, congestion, sneezing, and difficulty breathing through his nose at night and stated that a skin allergy test performed three years earlier revealed a mild allergic reaction to some pollens. The examiner diagnosed the Veteran with allergic rhinitis and sinusitis, detected only by imaging studies, and opined that they were less likely than not incurred in or caused by service. In support of this, the examiner explained, in part, that the Veteran’s service treatment records showed no evidence of continuous medical treatment for any conditions that be related to allergic rhinitis or sinusitis. 

Because the examiner did not appear to consider any of the above-referenced service treatment records, the RO should have obtained another medical opinion prior to making a decision on the claim. See Reonal, 5 Vet. App. at 461. Thus, the claim is remanded in order to correct this pre-decision duty-to-assist error. 

2. Entitlement to service connection for headaches is remanded

The Veteran seeks service connection for cephalalgia, or headaches, which he asserts are due to an undiagnosed illness related to his Persian Gulf War service.

Service treatment records contain an August 2005 post-deployment health assessment, which shows that the Veteran reported having headaches during his deployment. He subsequently denied symptoms of headaches on health assessments performed in September 2005, March 2007, and November 2008. 

Post-service treatment records show that in October 2017, the Veteran reported having intermittent headaches about every three months, which lasted up to two or three days at a time. A February 2018 sleep medicine consultation note shows that the Veteran reported having morning headaches, and he was subsequently diagnosed with mild obstructive sleep apnea in April 2018. In July 2018, the Veteran presented to the emergency room for a headache lasting about a week. He reported a history of similar episodes of headaches, which usually did not last more than a day or two. As previously noted, a CT scan of the head revealed mild sinus disease. It was noted that a medical work-up was normal, and the diagnosis was a headache. 

The Veteran underwent a VA examination in April 2019, during which he reported constant headaches since about 2005 or 2006. The examiner opined that the Veteran’s headaches were less likely than not incurred in or caused by service. In support of this, the examiner explained, in part, that headaches “are not an undiagnosed illness and/or a diagnosable but medically unexplained chronic multi-symptom illness of unknown etiology.”

Because regulations provide that headaches may be a manifestation of an undiagnosed illness, and the examiner did not attribute the Veteran’s headaches to a known cause, the RO should have obtained another medical opinion prior to making a decision on the claim. See 38 C.F.R. § 3.317. Accordingly, the claim is remanded in order to correct this pre-decision duty-to-assist error. 

The matters are REMANDED for the following action:

1. Provide the claims file to an appropriate VA examiner to obtain an opinion with respect to the Veteran’s claim for service connection for chronic sinusitis. If another examination is deemed necessary to respond to the question presented, one should be scheduled. 

Upon review of the record, the examiner should provide an opinion as it at least as likely as not (50 percent probability or greater) that the Veteran’s chronic sinusitis and/or rhinitis, which were diagnosed during the April 2019 VA examination, were incurred in or caused by service. The examiner should consider service treatment records noting complaints of congestion and other symptoms in June 2003, July 2003, November 2003, October 2004, and August 2005, which were attributed to diagnoses of upper respiratory infections, sinusitis, pharyngitis, and/or bronchitis, as well as a July 2018 post-service treatment record showing that a CT scan of the head revealed mild sinus disease.

2. Provide the claims file to an appropriate VA examiner to obtain an opinion with respect to the Veteran’s claim for service connection for headaches. Upon review of the record, the examiner should provide an opinion as to whether the Veteran’s currently reported headaches are attributable to any known clinical diagnosis by history, physical examination, or laboratory tests. 

 

K. A. BANFIELD

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board C. Banister, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.